Court notes that you were appointed under the Criminal Justice Act and appreciates your willingness to accept the appointment. No problem. Thank you. Good morning, Your Honors. May it please the Court, my name is Nate Nieman. I represent Giovany Guzman, who is the defendant appellant here. Mr. Guzman raises three issues on appeal. One is a sufficiency of the evidence argument, and the two other issues are sentencing issues. If the Court will indulge me, I'd actually like to focus on the sentencing issues first. And if there's any time remaining, then focus on the sufficiency argument. With respect to the first sentencing issue that we raised, that is in regard to the district court's calculation of the base offense level based on its weight determination. The difference in offense level was from a level 30, which the district court calculated, to a level 28, which we were asking for, which was based on our position that the drug weight in this case was less than 5 kilograms. Now, we had a jury trial in this case, and there was, of course, a special interrogatory that was submitted to the jury. And they found that the conspiracy did not involve more than 5 kilograms. Obviously, the standard is different at sentencing, and the government maintains that it proved that up. Basically, what this comes down to isn't necessarily spillage or residue or anything that might constitute that extra 10 grams. We're talking about 10 gram difference in 5,000 grams here, but as the district court found, it was the third unrecovered package which put the weight over the guideline threshold. And our position is that because that package was unrecovered and obviously the contents of it were untested, that that is speculation. And other circuits have indicated that when the court's obviously able to make estimates where there's unrecovered amounts of a controlled substance. But the 11th and 10th circuits have cautioned that those estimates have to be conservative and that courts have to be cautious, that they can't speculate as to what the weight would be. And it aren't saying it should count as zero here, though, or? We are. I mean, that's a little different than a conservative estimate. In some of these cases, they're saying if it's a range and you haven't recovered it, you've got to take the low end and that kind of thing. Well, why would this one count for zero? In this particular case, it's sort of a make or break scenario. If the court finds that there's essentially any cocaine in that third package, then that's going to push it over the threshold. I understand. That's why I'm asking, what's the argument? Why it counts for zero? The argument is that the only reason that the court found that the third package contained cocaine is because it bore similarities to the other packages that were recovered by law enforcement. But there are actual reasons as to why that package could have not contained cocaine, even though it was similar in nature to the other recovered packages. For instance, drug traffickers who are trafficking in this particular method can and often do send dummy packages or test packages to make sure that a package is able to get from one point to another. And this package was in a series of packages where we actually don't know whether there might have been even another package that was delivered before the first package. So it would make sense for an organization to send dummy packages or test packages to make sure that their routes were still being effective without actually putting skin in the game, essentially, by putting drugs in the package. So I think that in this particular case, the court's determination does amount to mere speculation here. With respect to- Clearly erroneous is the standard, right? Clearly erroneous is the standard of review. Yes, proceed. And likewise, with the third argument that we raised, clearly erroneous is the standard of review there. Now, the aggravating role adjustment in this case actually counted for five total offense levels. So it counted for three under 3B1.1B and then two under 2D1.1B15C. So the role adjustment here was not de minimis as far as the total effect that it had on the defendant's guideline calculation. And in the court's ruling on this role adjustment, the court stated that Guzman was unquestionably the supervisor of Ms. Williams, who was another co-conspirator. And he specifically found that Ms. Williams didn't have the sophistication, contacts, or ability to do this. But our position is that the record would certainly suggest to the contrary. What about the PSR statements, which I understand we can consider, that say, he told her where to pick up the package, where to meet him, where to go, and what to do? Well, Your Honor, that's the PSR in plain English. I understand. And we specifically objected to the factual basis that was contained in the PSR. Because we determined that the factual basis that should be considered by the court was at the trial. You objected to those specific paragraphs? We objected to the factual basis that probation relied upon. I don't recall objecting to those specific paragraphs. Isn't that the proper way to do it, if you want to make sure the court doesn't consider them? Well, it could be. But in this case, we're asking for the court, who is sitting in judgment of the trial, to take the factual basis that was given at trial, as opposed to the factual basis that probation came up with, as the factual record in the court. Are you familiar with the law that says if they're unobjected to portions of a pre-sentence report, then the court can take them as true? Yes. Are you familiar with that? Yes. So whether there was a trial or not, that's still the law. And if you don't object to the paragraphs, then they can be accepted as true. OK, so let's say, for argument's sake, that those were taken as true. Well, even if they were taken as true, that's one of the factors that the court has to consider, as indicated by Davis, which cites the comment to the rule. So if you look at the totality of the evidence, whether it's the factual basis that's contained in the PSR, or whether it's the trial evidence, Ms. Williams is at least an equal participant in this case. She didn't ever go to Mexico, though, right? She did not. Isn't that a big difference? I don't think that it is. Because all of the conspiracy activity occurred after the trip to Mexico. And when Mr. Guzman went down to Mexico with Mr. Gomez, he was not with Mr. Gomez down in Mexico. They were in contact. But it must be noted that these two are nephew and uncle, and that both were visiting family down there in different regions, and that their contact was never established at trial, or in the PSR's version of the facts, that the contact that Mr. Guzman and Mr. Gomez had in Mexico was related to anything regarding drug trafficking. So I would say the fact that Mr. Guzman was down in Mexico when Mr. Gomez went down there, I don't think that that's really actually that important. Because Mr. Guzman didn't do anything to assist Mr. Gomez in establishing drug trafficking channels. The bulk of the activity occurred through the mail and in the Quad Cities once the packages were received there. And Ms. Williams played a critical role in that. She asked other individuals who were not members of the conspiracy to use their addresses, such as Ms. Bastian. She was the one that was calling the UPS facility about the package. She was the one that picked up the package and drove it to the mall. She was the one that admitted to picking up another package. And the government did not present any evidence that Mr. Guzman was controlling any of these events. The one package she picked up, she almost immediately gave it to him, though, right, Guzman? Tell me if I have my facts right. That is correct. OK. That looks more like an inferior-superior relationship when you get it and you immediately give it to somebody else. Well, I think that that could be true. I mean, one could look at it that way. But I think that if you looked at it in the total context, she's actually doing more by picking up other packages. And I mean, somebody in this chain has to pick up the packages. But our position is that both Williams and Guzman were part of the distribution chain and that they were at least equal members, if not Ms. Williams being more culpable. I mean, as far as her metaphorical fingerprints on these packages, there's more fingerprints there from Ms. Williams in this conspiracy than there are from Mr. Guzman. I mean, if you took the trial transcript and you sort of isolated the portions that talk about Ms. Williams and isolate the portions that talk about Mr. Guzman, much more of the trial is going to be focused on Ms. Williams than Mr. Guzman. And certainly, of course, the object of the trial or the subject of it, rather, was Mr. Gomez. But these two co-conspirators, while certainly not bit players, are at least equal members. And I don't think that the government provided sufficient proof, either at trial or at sentencing, that an aggravated rule adjustment is warranted. So I see that my time is up, and I'd like to reserve three minutes for rebuttal. You may reserve 246 for rebuttal. You're welcome. Ms. Glasgow, we'll hear from you. Thank you, Your Honor. May it please the court, my name is Andrea Glasgow, and I represent the United States of America today.  to address some of the court's questions. First, I think what's been a bit overlooked here is that the court can take into account jointly undertaken criminal activity, including the reasonably foreseeable conduct of other members of the conspiracy. As was alluded to during the argument, there were only 10 grams. We were only 10 grams short of having 5 kilograms on the table. I thought the district court thought you could get to 6 grams away, 6.2. Right, I think that there was more than sufficient evidence to get over 5 kilograms on a number of different ways. First of all, there was evidence that the packages had been drilled into at the border for testing at the border, and that during transport, some cocaine had spilled out of the package. Was that quantified in grams? It was not. OK, per se. And there's no finding that that amounted to the 6. Right. That is correct. There was no ability to measure that, but. I don't know why you want us to focus on that then. If there's no finding on it, how could we affirm on that basis? Well, there's evidence in the record to support the district court's assertion that there were 5 kilograms involved in this conspiracy. That's one area where quantity can be found. There was a third package that wasn't recovered by law enforcement, which was not just similar, but went to an address that had been provided by Mr. Guzman to Mr. Gomez, and then Mr. Gomez to Carlitos in Mexico. That is the same fashion that the first two package addresses were provided to. Those two packages contained 2,990 grams of cocaine, and then 2,000 grams of cocaine. That package was picked up from FedEx the day after this UPS controlled delivery occurred. Ms. Williams stated that she had picked up a package for Mr. Guzman from FedEx, either the day before or the day after that UPS package. At the time that she was interviewed, she couldn't recall. That package was sent in the name Ashley Johnson. Ms. Williams then tried to communicate with Mr. Guzman in jail. Using mail, she had signed A. Johnson. An individual named Ashley Johnson was never identified associated with that address or in the community associated with these individuals. So there was substantial evidence upon which the district court could rely in determining that that package was associated with this conspiracy. Additionally, that package. What did she do with the package? I'm sorry? What did Williams do with the package? She gave it to Mr. Guzman. Who was in jail at the time, Gomez or Guzman? Well, at the time that she gave him the package, no one was in jail. Oh, you're referring to later conversations, when one of them was in jail. Yes, I'm sorry. After the trial, Ms. Williams sent Mr. Guzman mail, which was intercepted, with the name she had signed it A. Johnson. I see. You're saying that corroborates that she was the recipient of the FedEx package to A. Johnson? Correct. Which she had indicated she did, in fact, pick up a FedEx package. And then we believe that also corroborates that that is true, given the A. Johnson monitor. Did she even say a FedEx package of X? She didn't. Drugs or dope or whatever phrase they use? No, Ms. Williams continued to deny knowledge of what was in the packages. At all times? Yes. Proceed. So the district court inferred that it had cocaine in the package? Yes. It took it over the five kilos? But the district court also had before it evidence of this drug conspiracy. And the reasonably foreseeable conduct of other members of the conspiracy includes the source of supply. It was reasonable for the district court to infer that the source of supply had more than 10 grams at its disposal if they were just able to ship 4,990 grams in very short order. The concern I have with the argument you're making about that and about the spillage is that the district court didn't rely on those. And it seems like you're asking us to make appellate factual findings if we were to rely on those other quantities, as opposed to the third package, which is what the judge did rely on. Well, Your Honor, the standard that this court will look at is to look at the entire record and determine whether the entire record definitely and firmly illustrates that the lower court made a mistake. So the lower court, in its ruling, relied and specifically mentioned this third package, which was entirely reasonable. But the district court also had before it other information from which it could take and could find 10 grams at some point. Did the district court find, or did it intuit? I guess I'm sorry. I'm not sure of the distinction you're making. I'm not sure either, so let it go. Well, the district court, it's way beyond all that. It says, certainly, no question about it, those kind of words. Yes, I think. Certainly, the other package had a no question it did. Right, this package was coming from the same location in Mexico. It was also described as a stair. The various packages, one was described as an aerobic stair, one was described as a fiber stair. These were all described as stairs, and each of them contained kilogram in the same fashioned construction stair of what they were referring to. What does that mean, stair? What does it mean? Well, it was in the shape of steps or something? Well, like what you might think of as an aerobic stair. It was fashioned in that type of fashion. It was boarded up, and they had used fiberglass to board it up and paste it shut with different compartments within the step type thing. It was to look like a legitimate product, right? Well, no. I think everyone who testified. Fairly poorly constructed, but go ahead. Yes, I think everyone who testified said that if you had opened the package, it was very clear that this was not a fiberglass or aerobic stair. It was fairly obvious from its construction, but I think the idea was that, as was testified, Border Patrol will x-ray these packages. And I think the idea was that the general shape would be consistent with the stair. But also to discuss the rule, as Your Honor mentioned, I believe the trip to Mexico is an important factor in Mr. Guzman's role. I do want to start, though, by saying that just because Ms. Williams would also qualify for a role for recruiting other people, that doesn't mean that Mr. Guzman can't qualify for a role with her for recruiting her. But in fact, Mr. Guzman did go to Mexico with Mr. Gomez, and they returned just one day before these addresses get sent to Mexico. During the time that they're in Mexico, Mr. Guzman and Mr. Gomez are exchanging communication. And at one point, Mr. Gomez texts Mr. Guzman, the appellant, and says, are you coming? These guys have been waiting. So it's very clear from the evidence at trial that these two were in communication and were meeting throughout the time that they were in Mexico. Then one day upon their return, Mr. Guzman is communicating with Ms. Williams and relays to Mr. Gomez the addresses, which he, in turn, sends to Carlitos in Mexico. Within days, that first package is sent to the addresses that had been relayed. And as has been pointed out, Ms. Williams stated on several occasions that Mr. Guzman directed her to pick up the package, that she was doing him a favor. And that's corroborated by the fact that she picks him up a package at a UPS and meets him at a mall, which is minutes from the UPS location. There's simply no logical, practical reason for Ms. Williams to pick up that package other than, for one, it had been shipped in a false name and someone needed to present identification. And two, Mr. Guzman was trying to distance himself from the package because of its content, which also goes to his argument of the sufficiency of the evidence and understanding his role and the knowledge of the contents of the package. These can overlap and kind of play into each other, the evidence here, because the fact of the Mexico trip, the fact of directing Ms. Williams, the fact of collecting various addresses that these packages are going to go to, that all indicates Mr. Guzman's knowledge of what was in the package and supports the sufficiency of the evidence. If there are no additional questions, I can cede my time. Very well. Thank you for your argument. Mr. Niemann, you have some time remaining for rebuttal, if you'd like. Thank you, Your Honor. I would just like to quote the passage from Zapata, which is the 11th Circuit case that deals with speculation as to drug quantity. It says, although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative. And I think that in the court's questioning of the government, I think that Your Honors have been hitting on the point that we're trying to make, which is that the district court was firmly convinced that the third package contained cocaine when there just wasn't any evidence of that. And I don't know what else you could call the district court's determination other than speculation. You could call it inference from circumstantial evidence. You could. What about that? Is that another option? You could call it an inference from circumstantial evidence, but it doesn't differ in kind from speculation. The court is guessing, making a guess based on the other circumstances of the case, what's in the package. And I guess that you could characterize that as a reasonable inference. But we would characterize that as speculation. All right. Well, maybe that's what it comes down to, whether there's enough evidence there to make it a reasonable inference versus speculative. And while the jury finding is not really totally relevant, the 12 people that were sitting in that box all week listening to the evidence weren't willing to go as far as the district court was. They clearly determined that there wasn't enough in that third package to meet that threshold. How many offense levels turn on this? Two levels or? Just two. Two levels. It would go from a base level of 30 down to 28. The role is actually more significant. The role is a much more impactful guideline. That's a five level difference. So with that, thank you very much. And we would ask that you reverse. Very well. Thank you for your argument. Case is submitted. Thank you to both counsel. The court will file an opinion in due course. Counsel.